IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

AKEEM LABEEB AL-MUWWAKKIL,

Petitioner

v.　　　　　　　　　　　　　　　　　　　CIVIL NO. 4:16cv91
　　　　　　　　　　　　　　　　　　　　　CRIMINAL NO. 4:01cr92
UNITED STATES OF AMERICA,

Respondent.

## ORDER

This matter comes before the Court on Akeem Labeeb Al-Muwwakkil's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion"). ECF No. 77. For the reasons set forth herein, Petitioner's Motion is **DENIED**.

### I.　PROCEDURAL HISTORY

On September 5, 2001, Petitioner was named in a one-count indictment charging him with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g). ECF No. 7. Petitioner was found guilty after a jury trial. See ECF No. 16. Because of Petitioner's prior felony convictions, Petitioner was subject to a mandatory minimum 15 year sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). See Presentence Report ("PSR"), ECF No. 75, at 14, 18. On March 21, 2001, Petitioner was sentenced by this Court to 280 months of imprisonment. See J., ECF No. 22. On October 23, 2002, the Court of Appeals affirmed Petitioner's conviction and sentence. United States v. Al-Muwwakkil, 48 F. App'x 897 (4th Cir. 2002).

On October 31, 2003, Petitioner filed his first Section 2255 Motion. ECF No. 38. This

1

Court denied the motion on March 19, 2004, and did not issue a certificate of appealability. ECF No. 41. The Court of Appeals also denied a certificate of appealability and dismissed Petitioner's first Section 2255 Motion. ECF No. 49. In the years since the denial of his first Section 2255 Motion, Petitioner has filed a number of other motions for relief. See ECF Nos. 51, 52, 54, 57, 65.

On June 27, 2016, the Court of Appeals granted Petitioner authorization to file a successive Section 2255 Motion as the result of the Supreme Court's decisions in Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v. United States, 136 S. Ct. 1257 (2016). ECF No. 76. Petitioner then timely filed the instant Motion, arguing that, after Johnson, most of his prior felony convictions no longer qualify as "violent felonies" under the ACCA and that he should accordingly be resentenced as his current sentence exceeds the statutory maximum. ECF No. 77. The Court then ordered the United States to file an answer, motion, or other response. ECF No. 80. The United States subsequently filed a Response in Opposition on August 8, 2016. ECF No. 81. Petitioner then filed a number of motions, including a Motion to Stay, which this Court then construed as a Motion for Extension of Time to file a reply to the Government's response and granted Petitioner an additional twenty-one days to file a reply. ECF Nos. 82, 83, 84, 85. Petitioner timely filed a Reply. ECF No. 86.

## II. LEGAL STANDARD

### A. GENERAL STANDARD OF REVIEW

Collateral review created by 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing Court lacked jurisdiction; (3) the sentence imposed was in excess of the maximum amount authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. On such

2

grounds, the petitioner may move the court to vacate, set aside, or correct a sentence. The Supreme Court has held that Section 2255 is the appropriate vehicle by which a federal prisoner may challenge both a conviction and the post-conviction sentence. Davis v. United States, 417 U.S. 333, 343–44 (1974).

A district court may dismiss a petitioner's Section 2255 motion in several clearly defined circumstances. The statute provides that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt hearing thereon[.]" 28 U.S.C. § 2255. Thus, as a corollary, a court may dismiss a § 2255 motion if it is clearly inadequate on its face and if the petitioner would not be entitled to relief assuming the facts alleged in the motion are true. If the motion when viewed against the record shows that the petitioner is entitled to no relief, the court may summarily deny the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

When filing a Section 2255 petition to vacate, set aside, or correct a sentence, a petitioner "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence." Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998) (citing Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). A motion under Section 2255 may not "do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).[1]

---

[1] Any matter that could have been asserted either at trial or on appeal but was not so asserted is not appropriate for review on motion under Section 2255 without a showing of "cause" sufficient to excuse the procedural fault and a showing of "actual prejudice" resulting from the error. Frady, 456 U.S. at 167–68. "The existence of cause for procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). A showing of "actual prejudice" requires a petitioner to establish that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

Absent a showing of cause and prejudice, a petitioner may raise a procedurally defaulted claim in a

B.   THE ARMED CAREER CRIMINAL ACT

The ACCA imposes a mandatory minimum 15 year term of imprisonment upon any defendant who is convicted of being a felon in possession of a firearm and has three or more prior convictions for a "violent felony or serious drug offense." 18 U.S.C. § 924(e). The ACCA's definition of "violent felony" encompasses a "crime punishable by imprisonment for a term exceeding one year" that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause); (2) "is burglary, arson, or extortion, involves use of explosives" (the enumerated clause); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B). Johnson v. United States explained that the phrase "physical force" in the force clause means "violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010). Johnson, 135 S. Ct. at 2563, also held that the residual clause was void because it was unconstitutionally vague. Welch then made the new right recognized in Johnson, 135 S. Ct. at 2563, applicable on collateral review. 136 S. Ct. 1257.

In his Section 2255 Motion, Petitioner argues that after Johnson, most of his prior felony convictions no longer qualify as "violent felonies" under the ACCA. Typically, to determine whether an offense qualifies as a violent felony, a court must apply the categorical approach, whereby the court looks only at the elements of the offense and the fact of conviction. Taylor v. United States, 495 U.S. 575, 600 (1990). To qualify as a violent felony, the offense's "full range of proscribed conduct, including the least culpable proscribed conduct," must fall within the definition in Section 924(e)(2)(B). United States v. King, 673 F.3d 274, 278 (4th Cir. 2012). In

---

collateral attack only upon a showing that a "miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Mikalajunas, 186 F.3d at 493 (citing Frady, 456 U.S. at 167–68; United States v. Maybeck, 23 F.3d 888, 891–92 (4th Cir.1994)). A petitioner must establish actual innocence by clear and convincing evidence. Id.

4

other words, a court must ignore the actual conduct that led to the conviction and consider only the elements of the offense.

But in some instances a court may look beyond the elements of the offense, such as when the statute is divisible, listing elements in the alternative and thereby encompassing multiple crimes. In this instance, the court may apply the modified categorical approach. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). In employing this approach, the court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. This approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). This is because it still focuses "on the elements, rather than the facts, of a crime." Id.

Shepard v. United States requires that evidence of the prior convictions "be confined to the records of the convicting court approaching the certainty of the record of conviction." 544 U.S. 13, 20, 23 (2005). The Supreme Court identified such sources as "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." In Taylor, the Supreme Court had also identified jury instructions as a permissible source. 495 U.S. at 598. Together, Taylor and Shepard stand for the proposition that "without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." Shepard, 544 U.S. at 25. Shepard also specifically prohibited consideration of police

reports and complaint applications.[2] 544 U.S. at 16. See also United States v. Lopez-Collazo, 824 F.3d 453, 464 (4th Cir. 2016).

The Government bears the burden of proving prior conviction for a violent felony by a preponderance of the evidence. United States v. Harcum, 587 F.3d 219, 222 (4th Cir. 2009), abrogated on other grounds by Lopez-Collazo, 824 F.3d 453. See also Foster, 662 F.3d 291, 296 (4th Cir. 2011) ("This is the 'actual evidence' we require the government to show in order to prove a predicate conviction under Shepard-approved documents.").

### III. PETITIONER'S SECTION 2255 MOTION

Petitioner's PSR notes that at the time of sentencing, Petitioner qualified for an ACCA enhancement on the basis of six previous felony convictions. PSR, ECF No. 75, at 14. Those previous convictions were:

1. An April 5, 1971 conviction for attempted rape, for which Petitioner received a term of imprisonment of eight years in the Virginia State Penitentiary ("VSP"), id. at 5;

2. A conviction for maiming, for which Petitioner was arrested on December 29, 1975 and received a term of imprisonment of three years, which were then

---

[2] Subsequent Fourth Circuit case law has expanded the range of permissible documents to establish the ACCA prior conviction so long as the documents are either (1) explicitly incorporated into a Shepard-approved source or (2) are clearly derived from a Shepard-approved source. Such express incorporation must occur through direct and specific reference in the Shepard-approved document to the non-Shepard-approved document. See United States v. Donnell, 661 F.3d 890, 894–95 (4th Cir. 2011) ("The charging document charged, 'Upon the facts contained in the [application for the statement of charges]' the defendant committed battery. This incorporation language, we explained, allows the district court to refer to the facts in the application without violating Shepard." (internal citations omitted)). Furthermore, "mere reference to the tracking and case number fails to explicitly incorporate the [non-Shepard-approved] Statement of Charges into the [Shepard-approved] Information. Such numbers are found on several types of court and investigative documents, including those that have been deemed unreliable for ACCA purposes by other courts." Harcum, 587 F.3d at 225.
    In United States v. Boykin, 669 F.3d 467, 471 (4th Cir. 2012), the Fourth Circuit noted that a PSR can be used in ACCA determinations when it "bears the earmarks of derivation from Shepard-approved sources such as the indictments and state-court judgments from [a defendant's] prior convictions." As long as the information in the PSR comes from Shepard-approved sources, it may be used to determine if the petitioner was previously convicted of an ACCA violent felony. Id.

suspended, <u>id.</u> at 6;

3. A May 20, 1979 conviction for maiming (specified in the PSR as "causing bodily injury . . . with the intent to maim, disfigure, disable or kill"), for which he received a term of imprisonment of seven years in the VSP, <u>id.</u> at 7;

4. A conviction for shooting into an occupied dwelling, for which he was arrested on June 12, 1979 and received a term of imprisonment five years, <u>id.</u>;

5. A July 17, 1985 conviction for abduction, for which he received a term of imprisonment of ten years with seven years suspended (conditioned on ten years of good behavior and three years of supervised release), <u>id.</u>; and

6. A May 9, 1990 conviction for burglary, for which he received a term of imprisonment of ten years, with five years suspended (conditioned upon ten years of good behavior and one year of supervised probation), <u>id.</u> at 9.

The PSR also notes that Petitioner had previously been convicted on July 17, 1985 of use of a firearm in the commission of an offense, for which he received a term of imprisonment of two years, <u>id.</u> at 8; possession of a firearm by a convicted felon on May 9, 1990, for which he received a term of imprisonment of five years, <u>id.</u> at 10; and possession of cocaine on November 28, 1994, for which he received a term of imprisonment of three years, with one year suspended (conditioned upon five years of good behavior and one year of supervised probation), <u>id.</u> at 10–11. In its briefing, the Government argued that maiming under the Virginia statute was categorically a crime of violence, ECF No. 81, at 6, but also provided documentation via <u>Shepard</u>-approved documents for the two maiming convictions and the burglary conviction. <u>Id.</u>, Gov't Exs. A, B, C.

### A. MAIMING

#### 1. Legal Standard

7

The maiming offenses are both violations of Virginia Code § 18.2-51, which provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Virginia Class 3 felonies are punishable by a term of imprisonment between five and 20 years. Class 6 felonies are punishable by a term of imprisonment between one and five years. Va. Code. Ann. § 18.2–10.

Although Petitioner and the Government dispute whether maiming is categorically a crime of violence, see ECF Nos. 77, at 3; 81, at 6–10; 86, at 3–9, this Court does not need to resolve this question because the statute is divisible, and the crimes that Petitioner was convicted of fall under the force clause.

Chief Judge Rebecca Beach Smith of this District previously noted that the maiming statute found at Virginia Code § 18.2-51 is divisible because it "sets out elements in the alternative, creating multiple versions of the crime." Land v. United States, 2016 WL 6693168, at *3 (E.D. Va. Aug. 23, 2016) (citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)). See also Dawkins v. Commonwealth, 186 Va. 55, 64, 41 S.E. 2d 500, 505 (Va. 1947) ("The acts which constitute the offense, under the statute, are stated in the alternative."); English v. Commonwealth, 58 Va. App. 711, 718, 715 S.E.2d 391, 394 (Va. Ct. App. 2011). Accordingly, Section 18.2-51 encompasses four separate crimes: (1) malicious wounding; (2) maliciously causing bodily injury; (3) unlawful wounding; and (4) unlawfully causing bodily injury. Land, 2016 WL 6693168, at *3. See also Lee v. United States, 89 F. Supp. 3d 805, 811 (E.D. Va. 2015); United States v. Carter, 2013 WL 5353055, at *2 (E.D. Va. Sept. 24, 2013). As the statute is divisible, the Court may use the modified categorical approach to determine which element of Section 18.2-51 formed the basis of the two convictions for maiming. The Court "must then

determine whether each offense has as an element the use, attempted use, or threatened use of physical force against the person of another." Land, 2016 WL 6693168, at *3.

"A conviction for malicious wounding requires proof that the defendant shot, stabbed, cut, or wounded any person, and that the conduct was committed maliciously and with the intent to maim, disfigure, disable, or kill." Id. See also United States v. Le, 316 F. Supp. 2d 355, 363 (E.D. Va. 2004); Coleman v. Commonwealth, 261 Va. 196, 200, 439 S.E.2d 732 (2001). Thus, a malicious wounding conviction requires the defendant to have inflicted a physical injury sufficient to break the skin. Land, 2016 WL 6693168, at *3. See also Johnson v. Commonwealth, 184 Va. 409, 415–16, 35 S.E.2d 594 (Va. 1945). This, in turn, clearly involves the use, attempted use, or threatened use of physical force capable of causing physical pain or injury. See United States v. Castleman, 134 S. Ct. 1405, 1417 (2014) (Scalia, J., concurring) ("[I]ntentionally or knowingly causing bodily injury categorically involves the use of force capable of causing physical pain or injury to another person." (internal quotation marks and citations omitted)). As this District previously concluded in Land, "even the least culpable means of committing Malicious Wounding requires the use of force as defined in § 924(e)(2)(B)(i)." 2016 WL 6693168, at *3.

As unlawful wounding is only distinguished from malicious wounding by the element of malice, Witherow v. Commonwealth, 65 Va. App. 557, 779 S.E.2d 223, 228 (Va. Ct. App. 2015), unlawful wounding also necessarily involves the use, attempted use, or threatened use of physical force against the person of another. Land, 2016 WL 6693168, at *4. "The offense still requires proof that the defendant shot, stabbed, cut, or wounded any person, with the intent to maim, disfigure, disable or kill. Such actions all involve force capable of causing physical pain or injury." Id. Furthermore, removal of the malice element does not change the conduct's

encompassment of the use, attempted use, or threatened use of physical force, as defined in the force clause in 18 U.S.C. § 924(e)(2)(B)(i). Id. See also United States v. Carter, 2013 WL 5353055, at *3 (E.D. Va. Sept. 24, 2013) ("The Fourth Circuit has held that an unlawful wounding conviction under § 18.2-51 constitutes a violent felony for purposes of the ACCA." (internal citations omitted)).

With respect to causing bodily injury, Petitioner argues that causing bodily injury to another may be committed indirectly—that is, without the use of physical force, as is required by the ACCA for violent felonies under the force clause. ECF No. 86, at 8. Petitioner relies on United States v. Lopez-Reyes, 945 F. Supp. 2d 658 (E.D. Va. 2013), in which Judge T.S. Ellis found, in the context of whether Va. Code Ann. § 18.2-51 qualified as a crime of violence under United States Sentencing Guidelines § 2L1.2(b)(1)(A), that because a defendant may "cause[] bodily injury to another individual 'by any means,' including, for example, by poison or trickery," "the crime of 'unlawful bodily injury,' as contemplated by the express terms of § 18.2-51, does not, categorically, have 'as an element the use, attempted use, or threatened use of physical force against the person of another." 945 F. Supp. 2d at 661.

However, in Castleman, the Supreme Court held—in the context of a domestic violence statute which included as an element "the use or attempted use of physical force," 19 U.S.C. § 921(a)—that, when intentionally or knowingly causing bodily injury, it does not matter whether the harm occurs directly or indirectly. Rather, "the knowing or intentional causation of bodily injury necessarily involves the use of physical force" under the common law definition of force. 134 S. Ct. at 1414. See also Castleman, 134 S. Ct. at 1417 (Scalia, J., concurring) ("[I]ntentionally or knowingly causing bodily injury categorically involves the use of force capable of causing physical pain or injury to another person." (internal citations and quotation

10

marks omitted)). As Judge Ellis explained in <u>United States v. Cuong Gia Le</u>, 2016 WL 4718947, at *10 (E.D. Va. Sept. 8, 2016):

> At issue in <u>Castleman</u> was a "crime of domestic violence" statute, which included as an element "'the use or attempted use of physical force.'" <u>Id.</u> at 1407 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). Just as defendant contends here, the defendant in <u>Castleman</u> argued that "although poison may have forceful physical properties as a matter of organic chemistry, . . . no one would say that a poisoner [use]s force or carries out a purpose by means of force when he or she sprinkles poison in a victim's drink." <u>Id.</u> at 1415. The Supreme Court squarely rejected this argument, reasoning that "[t]he use of force . . . is not the act of sprinkling the poison," but "the act of employing poison knowingly as a device to cause physical harm." <u>Id.</u> The Supreme Court further explained that "it does not matter" that "the harm occurs indirectly, rather than directly," noting that under the defendant's reasoning, "one could say that pulling the trigger on a gun is not the 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." <u>Id.</u> The Supreme Court's reasoning in <u>Castleman</u> applies here and requires rejection of defendant's argument based on the <u>Torres–Miguel</u> decision.

It should be noted that the question of whether causing bodily injury under Va. Code Ann. 18.2-51 categorically involves the use of force has not been decisively resolved by the Fourth Circuit. <u>See</u> <u>United States v. McNeal</u>, 818 F.3d 141, 156 n. 10 (4th Cir. 2016). Nonetheless, the Court notes that, for reasons discussed below, it only need determine whether <u>maliciously</u> causing bodily injury constitutes a crime of violence. In Virginia, malice demonstrates intent. <u>Doss v. Commonwealth</u>, 23 Va. App. 679, 685–86, 479 S.E.2d 92, 95–96 (Va. Ct. App. 1996) (internal quotations and citations omitted). <u>See also</u> <u>Williams v. Commonwealth</u>, 13 Va. App. 393, 398, 412 S.E.2d 202, 206 (Va. Ct. App. 1991). Accordingly, a conviction for maliciously causing bodily injury would require proving intent to cause bodily injury. This, in turn, would necessarily encompass the use of force capable of causing physical pain or injury to another person.[3] (As noted above, the Supreme Court concluded in <u>Castleman</u>

---

[3] The Fourth Circuit has also previously rejected, in an unpublished opinion, the contention that the phrase "by any means" in the unlawful wounding statute encompasses conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another because Virginia precedent has narrowed the scope of the phrase "by any means" to encompass force as defined by the ACCA. <u>United States v. Candiloro</u>, 322 Fed. App'x

11

that it was the act of employing poison knowingly as a device to cause physical harm that constituted the use of force. 134 S.Ct. at 1415 (2014)). Thus, maliciously causing bodily injury would fulfill the ACCA's definition of violent felony under the force clause.

### 2. Discussion

With respect to the maiming for which Petitioner was arrested for in 1975, the PSR does not provide any information as to which of the four maiming crimes Petitioner was convicted. PSR, ECF No. 75, at 6. Government has provided:

1. A grand jury indictment dated September 14, 1976 from the Bland County Circuit Court for felonious assault charging that Petitioner on August 18, 1975 "did unlawfully, feloniously and maliciously stab, cut and wound and did cause bodily injury . . . by cutting and stabbing with intent to maim, disable, disfigure or kill" in violation of Va. Code Ann. § 18.1-65, later codified as Va. Code Ann. § 18.2-51, ECF No. 81, Gov't Ex. A;

2. An arrest warrant dated December 9, 1975 for Petitioner for unlawfully making an assault and "unlawfully, feloniously and maliciously . . . stab[bing], cut[ting] and wound[ing]" and "caus[ing] bodily injuries to [the victim] by cutting and stabbing with intent to maim, disable, disfigure or kill . . . [in] violation of Section 18.1-65, Virginia Code," id.;

3. A Bland Circuit Court Disposition of Charge form dated June 11, 1976 sending the execution of the arrest to the grand jury, id.; and

4. A Bland County Circuit Court Order dated May 5, 1977 accepting Petitioner's plea of guilty to the "indictment for unlawful wounding" and sentencing

---

332, 333 (4th Cir. 2009) (unpublished) (citing Harris v. Commonwealth, 150 Va. 580, 142 S.E. 354, 355 (1928); Harper v. Commonwealth, 196 Va. 723, 85 S.E. 2d 249. 255 (1955)).

12

Petitioner to three years of imprisonment, id.

Based on the Shepard-approved documents, Government has proven, by a preponderance of the evidence, Defendant's first previous felony conviction for unlawful wounding. As unlawful wounding is a violent felony under the force clause of the ACCA, Government has further proven Petitioner's conviction for an ACCA violent felony.

With respect to the 1979 maiming conviction, the PSR notes Petitioner was convicted of maiming after "caus[ing] bodily injury discusses Petitioner's conviction for causing bodily injury with the intent to maim, disfigure, disable or kill." PSR, ECF No. 75, at 7. The PSR also notes Petitioner was sentenced to seven years of imprisonment. Id. Government has also provided:

1. Newport News Circuit Court Grand Jury Indictment No. 5214-79, dated August 13, 1979, charging that Petitioner on May 20, 1979 "feloniously and maliciously caused bodily injury . . . with intent to maim, disfigure, disable or kill" in violation of Va. Code 18.1-51, ECF No. 81, Gov't Ex. B;

2. A Newport News Circuit Court Order, dated August 30, 1979, accepting Defendant's plea of guilty and finding him guilty, as charged in Indictment No. 5214-79 from August 13, 1979, of maiming, id.; and

3. A Newport News Circuit Court Order dated October 1, 1979, sentencing Defendant following his conviction for maiming, as charged in Indictment No. 5214-79 from August 13, 1979, id.

Thus, Petitioner was convicted of causing bodily injury. Petitioner was sentenced for seven years, which means that he was convicted of a Class 3 felony—that is, for maliciously causing bodily injury. See Va. Code Ann. §§ 18.2-10, 18.2-51. As a conviction for maliciously causing bodily injury constitutes a conviction for a violent felony under the ACCA force clause, the

13

Government has proven by a preponderance of the evidence that Petitioner was convicted of an ACCA violent felony. Thus, Government has proven that Petitioner was convicted of two violent felonies under the force clause of the ACCA.

### B. BURGLARY

#### 1. Legal Standard

Although the definition of "violent felony" under the ACCA at 18 U.S.C. § 924(e)(2)(B) specifically lists burglary as a violent felony, not all burglary convictions qualify as violent felonies. Foster, 662 F.3d at 291–92. Only what the Supreme Court calls a "generic burglary" qualifies as a burglary under the ACCA's definition of a violent felony. Taylor, 495 U.S. at 598. A generic burglary is "any crime, regardless of its exact definition or label having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 599.

However, Virginia's burglary statute is broader than the generic burglary statute identified by the Supreme Court because the statute encompasses—including the version of the statute at the time Petitioner was convicted of the burglaries—three crimes: (1) burglary of offices, shops, storehouses, warehouses, banking houses, or other houses; (2) burglary of ships, vessels, river crafts, or railroad cars; and (3) burglary of automobiles, trucks, or trailers "used as a dwelling or place of human habitation." Va. Code Ann. § 18.2-90; cf. Foster, 662 F.3d at 293–94. Thus, if the fact of conviction alone is insufficient to establish the existence of a <u>generic</u> burglary conviction, courts may consider evidence beyond the conviction statute and look to records demonstrating that an individual "necessarily" was convicted of a generic offense. Taylor, 495 U.S. at 602. An offense may constitute burglary if the record indicates the court or jury was required to find all the elements of generic burglary to meet the elements of statutory burglary, such as if the record indicates the defendant broke into a "restaurant" or "market,"

14

which would generally imply breaking into buildings or structures. Foster, 662 F.3d at 296.

In addition to being Shepard-approved, such documents must prove the generic finding. In Foster, the Fourth Circuit held that convictions for burglarizing a "market," "restaurant," and a "shop" led to the "compelling conclusion" that the convictions were for burglaries of buildings or structures. Foster, 662 F.3d 291, 295 (4th Cir. 2011). Although there existed the remote possibility that a market, restaurant, or shop could be aboard, for example, a vessel, the Fourth Circuit noted that courts "are not required to 'wear blinders' or to cast logic aside" in determining whether the defendant had burglarized a building or structure. Id. at 296 (quoting United States v. Miller, 478 F.3d 48, 52 (1st Cir. 2007)). Similarly, in United States v. Major, Case No. 1:11cr16, 2016 WL 4059662, at *8 (E.D. Va. 2011), this District determined that a conviction—as established through a Shepard-approved document—for breaking into a "dwelling" or "dwelling house" sufficiently proved that the defendant had burglarized a building or structure.

Petitioner argues that, after Mathis v. United States, 136 S. Ct. 2243 (2016), Virginia burglary no longer constitutes a divisible offense. ECF No. 86, at 11–14. In Mathis, 136 S. Ct. at 2249, the Supreme Court clarified that, for the purposes of determining whether a statute was divisible, the statute must list "multiple elements disjunctively" so as to "define multiple crimes" rather than "enumerat[ing] various factual means of commit a single element."[4]

---

[4] The Supreme Court further explained, id.:

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon."

Nonetheless, district courts in both the Eastern and Western Districts of Virginia have declined to apply Mathis to the Virginia burglary statute for the purposes of Johnson-based Section 2255 petitions. In United States v. Major, 2016 WL 4059662, at *6 (E.D. Va. July 27, 2016), this District continued to apply the rationale of Foster in deciding whether the Virginia burglary statute was divisible and agreed that Va. Code. § 18.2-90 defined "breaking and entering as a crime under three separate [location] clauses." Id. Furthermore, in Blackwell v. United States, 2016 WL 5849384, at *5 (W.D. Va. Oct. 6, 2016), the Western District of Virginia concluded:

> Although Mathis is a relatively recent decision (being decided on June 23, 2016), an argument raising the Mathis rationale is . . . time barred. If Mathis represented the Supreme Court's recognition of a new right, Petitioner would be permitted to make that argument now. Unfortunately for Petitioner, the Supreme Court torpedoed the argument that Mathis treads new ground. By the Court's own admission, Mathis does not set a new rule. Rather, the same precedents that undergirded Foster resolved the issue in Mathis. . . . The "longstanding principles" that were announced in Taylor and applied in Foster, "and the reasoning that underlie[d] them," made the conclusion in Mathis a foregone one. . . .
>
> As is evident from the Fourth Circuit's opinion in Foster, the circuit court was well aware of the Supreme Court's admonition in Taylor that all that counts for ACCA purposes are "the elements of the statute of conviction." Taylor, 495 U.S. at 601; see Foster, 662 F.3d at 293. The Fourth Circuit determined that the Virginia burglary statute was divisible on the elements, and therefore district courts were obliged to consider Shepard-approved documents to discern whether a defendant had committed an ACCA-predicate version of burglary or not. The Supreme Court had the opportunity to overturn Foster, but declined to do so. See Foster v. United States, 133 S. Ct. 207 (2012) (denying certiorari). It remains good law, and under that law, Petitioner's convictions for burglary and breaking and entering are "crimes of violence" under the ACCA. By the Supreme Court's own admission, the holdings in both Mathis and Foster were compelled by Taylor. Therefore, Mathis does not represent a "newly recognized right," and Petitioner's argument is time barred under 28 U.S.C. § 2255(f).

This Court agrees with this reasoning and considers Petitioner's argument concerning his burglary conviction under the rationale of Foster.

    **2. Discussion**

16

The Government has provided one set of documents to prove, under the modified categorical approach, Petitioner's prior conviction for burglary. These documents include:

1. A Newport News Circuit Court grand jury indictment dated November 13, 1990 and numbered 19697-90 charging Defendant with "feloniously in the daytime or nighttime . . . break[ing] and enter[ing] the dwelling house of [the victim], 1115 30th Street, Newport News, Virginia, with intent to commit murder" on May 9, 1990, in violation of "Virginia Code: 18.2-90 (Burglary)," ECF No. 81, Gov't Ex. C;

2. A Newport News Circuit Court Order dated April 29, 1991, accepting Petitioner's plea of guilty to the indictment (numbered 19697-90 and dated November 13, 1990) that charged him with "Burglary (Virginia Code Section 18.2-90)," id.

The grand jury indictment clearly indicates that Petitioner broke into a building or structure by breaking into a "dwelling house." Furthermore, the Circuit Court Order finding Petitioner guilty incorporates the indictment for Petitioner's burglary of a building or structure. As a result, the Government has proven by a preponderance of the evidence Petitioner's previous felony conviction for burglary of a building or structure. Accordingly, Petitioner's previous burglary conviction constitutes a conviction for a generic burglary, and thereby a conviction for a violent felony, as defined by the ACCA under the enumerated offenses clause.

Altogether, based on the two previous convictions for maiming and the previous conviction for burglary, all of which the Government has proven by a preponderance of the evidence, Petitioner's sentencing enhancement pursuant to the ACCA was the result of at least three previous violent felony convictions under the force and enumerated clauses of the ACCA.

The Court need not consider the other felony convictions. Accordingly, as the sentence Petitioner received did not depend on the ACCA residual clause invalidated in Johnson, Petitioner does not present a viable challenge under Johnson to his sentence.

### IV. CONCLUSIONS

For the reasons stated herein, Petitioner's Motion is **DENIED**. ECF No. 77. The Petitioner is **ADVISED** that he may appeal from this Order by forwarding, within sixty (60) days of the entry date of this Order, a written notice of appeal to the Clerk of the United States District Court, 500 Granby Street, Norfolk, VA 23510.

As Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right," the Court declines to issue a certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

The Clerk is **DIRECTED** to forward a copy of this Order to the United States Attorney's Office and to the Petitioner.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 24, 2017